UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY SHAWN JANOE,<br><br>Plaintiff,<br><br>v.<br><br>SILVIA GARCIA, Warden; STUART<br>J. RYAN, Acting Warden,<br><br>Defendants. | Civil No. 04cv1421 W(RBB)<br><br>**REPORT AND RECOMMENDATION RE:<br>GRANTING DEFENDANTS' MOTION TO<br>DISMISS AND GRANTING<br>DEFENDANTS' MOTION FOR SUMMARY<br>JUDGMENT [DOC. NO. 30] AND<br>ORDER RULING ON DEFENDANTS'<br>EVIDENTIARY OBJECTIONS [DOC.<br>NO. 41]** |

Plaintiff Bobby Shawn Janoe, a state prisoner proceeding pro se and in forma pauperis, filed a civil rights complaint on July 15, 2004 [doc. no. 1], pursuant to 42 U.S.C. § 1983. Janoe asserts that his right of access to the courts and his right to due process were violated because he was given inadequate access to the law library at Calipatria State Prison. (Compl. 3.) At Defendants' request, the Court extended the deadline to answer the Complaint to May 16, 2005, and an Answer [doc. no. 13] was filed on that date. (See Order Granting App. for Extension; Order Granting App. for Second Extension.)

1

On June 30, 2006, Defendants filed Motions to Dismiss and for Summary Judgment [doc. no. 30] and a Memorandum of Points and Authorities in Support of Motions [doc. no. 31].  The Motions were accompanied by Declarations from Dexter Bell [doc. no. 33], Sylvia Garcia [doc. no. 39], K. Raske [doc. no. 40], and Michael German [doc. no. 32].  Defendants also filed a Request for Judicial Notice [doc. no. 34] of the complete file and records in the action and all exhibits submitted in support of Defendants' Motions.

The Court found Defendants' Motions suitable for decision without oral argument pursuant to civil local rule 7.1(d)(1) [doc. no. 36].  Plaintiff was given notice, pursuant to <u>Rand v. Rowland</u>, 154 F.3d 952 (9th Cir. 1988), and <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988), of his opportunity to submit evidence in opposition to Defendants' Motion for Summary Judgment [doc. no. 37].  Janoe submitted an Opposition to Defendants' Motions to Dismiss and for Summary Judgment [doc. no. 43], with a Memorandum of Points and Authorities [doc. no. 46] and a Declaration with exhibits [doc. no. 45] in support of the Opposition, which were all filed nunc pro tunc to the date received, July 21, 2006.  Plaintiff also filed a Request for Judicial Notice [doc. no. 44].  Defendants filed their Reply on July 24, 2006 [doc. no. 38] and later filed Objections to Plaintiff's Evidence [doc. no. 41].

Defendants argue that Janoe's claims should be dismissed pursuant to the unenumerated portions of Federal Rule of Civil Procedure 12(b) because Plaintiff failed to exhaust his administrative remedies before filing suit.  (Defs.' Mem. 3.) Defendants also assert that they are entitled to summary judgment because (1) Janoe has not suffered an actual injury; (2) Defendants

2

1   are absolutely immune from any damages claim; (3) Defendants are

2   entitled to qualified immunity; and (4) injunctive relief is not

3   appropriate.  (Defs.' Mem. 8, 10, 13.)

4        For the reasons set forth below, the district court should

5   **GRANT** Defendants' Motion to Dismiss.  Alternatively, the district

6   court should **GRANT** Defendants' Motion for Summary Judgment.

7                      **I. FACTUAL BACKGROUND**

8        On January 12, 1994, Plaintiff was convicted of first degree

9   murder and received a sentence of life without the possibility of

10  parole.  (German Decl. Ex. A.)  Janoe is currently incarcerated in

11  Calipatria State Prison.  (Compl. 1.)  Plaintiff appealed his

12  conviction directly to the California Court of Appeal, which

13  affirmed on April 29, 1996.  People v. Janoe, No. G015980, docket,

14  http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist

15  =43&doc_id=10538&doc_no=G015980.  On May 6, 1996, Janoe filed a

16  petition for rehearing, which the court of appeal denied.  Id.  He

17  then filed a petition for review by the California Supreme Court on

18  June 10, 1996.  Id.  The court denied his petition on August 19,

19  1996.  Id.  Plaintiff filed additional petitions for review with

20  the California Supreme Court on July 13, 1998, and April 29, 2002,

21  both of which were summarily denied.  Janoe v. Imperial Valley

22  Superior Court, No. S071800, docket, http://appellatecases.

23  courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=71652&doc_no

24  =S071800; Janoe v. Orange County Superior Court, No. S106333,

25  docket, http://appellatecases.courtinfo.ca.gov/search/case/dockets.

26  cfm?dist=0&doc_id=205322&doc_no=S106333.

27       Janoe also filed state habeas corpus petitions.  Plaintiff

28  filed a petition for writ of habeas corpus in the California

                                  3

Supreme Court on March 27, 1998, another petition in the same court on May 18, 1998, and a third petition on July 11, 2002, all of which were denied. In re Janoe, No. S070370, docket, http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=70226&doc_no=S070370; In re Janoe, No. S069015, docket, http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=68867&doc_no=S069015; In re Janoe, No. S108292, docket, http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=217326&doc_no=S108292.

Janoe filed a federal petition for writ of habeas corpus in the Southern District of California on March 20, 1996, challenging his 1994 murder conviction; the petition was denied for failure to exhaust state court remedies. Janoe v. Prunty, No. 96cv505-K(AJB) (S.D. Cal. filed Mar. 20, 1996) (pet.); Janoe v. Prunty, No. 96cv505-K(AJB), slip op. at 3 (S.D. Cal. Jan. 10, 1997). Plaintiff subsequently filed a petition for writ of habeas corpus in the Central District of California, which was denied. See Janoe v. Small, No. 98cv1140-GLT(JWJ) (C.D. Cal. filed Dec. 22, 1998) (pet.); Janoe v. Small, No. 98cv1140-GLT(JWJ), slip op. at 1 (C.D. Cal. Jan. 25, 2001). The district court denied Janoe's request for a Certificate of Appealability on March 19, 2001. Janoe v. Small, No. 98cv1140-GLT(JWJ), doc. no. 54 (C.D. Cal. Mar. 19, 2001). The Ninth Circuit also denied a request for a Certificate of Appealability, and Janoe's petition for rehearing was denied on November 2, 2001. (Pl.'s Mem. Ex. 6, at 2); Janoe v. Small, No. 01-55546, docket (9th Cir. Nov. 2, 2001).

Plaintiff's deadline to file a petition for writ of certiorari to the U.S. Supreme Court was January 31, 2002, ninety days after

4

the Ninth Circuit denied rehearing.  <u>See</u> Sup. Ct. R. 13.  According
to Janoe, he was unable to complete his petition for certiorari by
the Supreme Court's deadline because he was not allowed enough time
in the prison's law library.  (Compl. 3.)  Plaintiff submitted
requests for an extension of time to file his writ petition; one
application was rejected for failure to attach the order denying
rehearing and another as untimely, arriving well after the petition
was due.  (Pl.'s Mem. Ex. 10.)  Prison attendance records show that
Janoe was at the law library five times in November 2001; then, he
did not go again until February 2002.  (Raske Decl. Ex. A.)
Plaintiff requested library time on January 29 and 31, 2002, but he
did not attend the library on those dates.  (<u>Id.</u> Exs. A, B at 1,
3.)

    Janoe contends that he submitted several inmate appeals to
prison administrators to complain about his lack of access to the
law library.  According to Plaintiff, he filed inmate grievance
forms (commonly known as "602" forms) on January 16 and 25, 2002,
requesting additional library time to complete his petition to the
Supreme Court. (Compl. 3; Pl.'s Mem. Ex. 8, at 1.)  Specifically,
Janoe's 602 form dated January 16, 2002, states, "My court
deadline, to submit my writ of certiorari to the United States
Supreme Court is the end of January 02.  I need to be ducated as
much as possible for the law library." (Pl.'s Mem. Ex. 8, at 2.)
The 602 form dated January 25, 2002, contains a similar request.
(<u>Id.</u> at 3.)  Neither 602 form appears on the computer printout of
the Inmate/Parolee Appeals Tracking System for the relevant time
period.  (<u>See</u> Bell Decl. Ex. F.)

1    Janoe also claims he filed a 602 form for library time on
2    April 8, 2002, which went unanswered.  (Pl.'s Mem. 6.)  Although
3    Plaintiff's evidence includes a copy of a 602 bearing that date,
4    the form Plaintiff produced is not stamped or otherwise marked as
5    received by prison staff.  (Pl.'s Mem. Ex. 8, at 4.)  The appeals
6    regarding legal issues on the prison printout are after Janoe's
7    deadline for submitting a petition to the Supreme Court had passed.
8    (See Bell Decl. Ex. F.)

9    The evidence presented by Defendants shows that the first
10   appeal on a legal issue was filed by Plaintiff on September 10,
11   2002, after submitting it to staff on August 18, 2002.  (Id.; Bell
12   Decl. Ex. A at 1.)  This grievance, however, related to obtaining
13   Janoe's records from "r&r" (Receiving and Release) but does not
14   mention library time.  (Bell Decl. Ex. A at 1.)  The parties
15   produced sixteen stamped and verified 602s asserting legal issues
16   which Janoe submitted to prison staff between August 2002 and May
17   2006, all well after his petition for certiorari was denied by the
18   Supreme Court.  (See Bell Decl. Ex. A-E; Pl.'s Mem. Exs. 11, 13-
19   22.)

20   **II. LEGAL STANDARDS APPLICABLE TO THE FAILURE TO EXHAUST**
21   **A.   Motion to Dismiss Unexhausted Claims Pursuant to the**
22        **Unenumerated Portions of Rule 12(b)**
23   Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act
24   ("PLRA") states:  "No action shall be brought with respect to
25   prison conditions under section 1983 of this title, or any other
26   Federal law, by a prisoner confined in any jail, prison, or other
27   correctional facility until such administrative remedies as are
28   available are exhausted."  42 U.S.C.A. § 1997e(a) (West 2003).  The

6

exhaustion requirement applies regardless of the relief sought. Booth v. Churner, 532 U.S. 731, 741 (2001).

"'[A]n action is "brought" for purposes of § 1997e(a) when the complaint is tendered to the district clerk' . . . ." Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (quoting Ford v. Johnson, 362 F.3d 395, 400 (7th Cir. 2004)).  Therefore, prisoners must "exhaust administrative remedies before submitting any papers to the federal courts." Id. at 1048 (emphasis added).

Section 1997e(a)'s exhaustion requirement creates an affirmative defense. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "[D]efendants have the burden of raising and proving the absence of exhaustion." Id. (footnote omitted).  Defendants in § 1983 actions properly raise the affirmative defense of failure to exhaust administrative remedies through an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Id.

Unlike Rule 12(b)(6) motions to dismiss for failure to state a claim for which relief may be granted, "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988)).  "A court ruling on a motion to dismiss also may take judicial notice of 'matters of public record.'" Hazleton v. Alameida, 358 F. Supp. 2d 926, 928 (C.D. Cal. 2005) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)).  But "if the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust[,] . . . the court must assure that [the

1  plaintiff] has fair notice of his opportunity to develop a record."

2  Wyatt, 315 F.3d at 1120 n.14.

3       "[When] the district court concludes that the prisoner has not

4  exhausted nonjudicial remedies, the proper remedy is dismissal of

5  the claim without prejudice."  Id. at 1120 (citing Ritza v. Int'l

6  Longshoremen's & Warehousemen's Union, 837 F.2d at 368 & n.3).  A

7  factual finding that Janoe failed to exhaust is reviewed under the

8  clearly erroneous standard.  Id.

9  B.   **The Administrative Grievance Process**

10      "The California Department of Corrections [CDC] provides a

11  four-step grievance process for prisoners who seek review of an

12  administrative decision or perceived mistreatment:  an informal

13  level, a first formal level, a second formal level, and the

14  Director's level."  Vaden, 449 F.3d at 1048-49 (citing Brown v.

15  Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005)).  The administrative

16  appeal system can be found in title 15, sections 3084.1, 3084.5,

17  and 3084.6 of the California Code of Regulations.  See Brown v.

18  Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005) (citing Cal. Code

19  Regs. tit. 15, §§ 3084.1(a), 3084.5(a)-(b), (e)(1)-(2), 3084.6(c)).

20      To comply with the CDC's administrative grievance procedure,

21  an inmate must file his grievance at the informal level "within 15

22  working days of the event or decision being appealed . . . ."  Cal.

23  Code Regs. tit. 15, § 3084.6(c) (2006); see also Brown, 422 F.3d at

24  929.

25  C.   **Standards Applicable to Pro Se Litigants**

26      Where a plaintiff appears in propria persona in a civil rights

27  case, the Court must construe the pleadings liberally and give the

28  plaintiff the benefit of any doubts.  Karim-Panahi v. Los Angeles

8

1  Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of

2  liberal construction is "particularly important in civil rights

3  cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

4  **III. PLAINTIFF'S FAILURE TO EXHAUST**

5  **A.   Judicial Notice**

6       Defendants request judicial notice of the complete file and

7  records in this action, Exhibits A through E to the Declaration of

8  Dexter Bell, and Exhibits A through D to the Declaration of G.

9  Michael German.  (Defs.' Req. Jud. Notice 1.)  Plaintiff also

10 requests that the Court take judicial notice of the complete file

11 and records in this action and of Janoe's Declaration and all

12 attached exhibits.  (Pl.'s Req. Jud. Notice 1.)

13      A court may take judicial notice of any fact that is "not

14 subject to reasonable dispute in that it is either (1) generally

15 known within the territorial jurisdiction of the trial court or (2)

16 capable of accurate and ready determination by resort to sources

17 whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

18 201(b).  "A court shall take judicial notice if requested by a

19 party and supplied with the necessary information."  Fed. R. Evid.

20 201(d).

21      Judicial notice may be taken of records of state agencies and

22 other undisputed matters of public record.  Disabled Rights Action

23 Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir.

24 2004) (citing Lee v. City of Los Angeles, 250 F.3d at 689).  But it

25 is an abuse of discretion to take judicial notice of agency records

26 when the facts contained in them are subject to reasonable dispute.

27 Brown, 422 F.3d at 931 n.7 (quoting City of Sausalito v. O'Neill,

28 386 F.3d 1186, 1224 n.2 (9th Cir. 2004)); Lee v. City of Los

9

1  <u>Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).  Also, a court should

2  only take judicial notice of facts contained in agency records that

3  bear "sufficient indicia of reliability . . . ."  <u>United States v.</u>

4  <u>Perez-Corona</u>, 295 F.3d 996, 1001 n.4 (9th Cir. 2002).  Even if

5  facts or records are not subject to judicial notice, they may still

6  be germane to Defendants' unenumerated motion to dismiss for

7  failure to exhaust or their motion for summary judgment.

8       Exhibits A through E to Bell's Declaration consist of 602

9  forms completed by Janoe on August 18, 2002, January 5, 2004,

10 February 22, 2004, April 26, 2004, and May 5, 2004, and the

11 administrative responses to each.  (Bell Decl. Exs. A-E.)  These

12 forms are signed and dated by Plaintiff, and they have log number

13 stamps and stamps indicating they were received by prison

14 administrators.  (<u>See</u> <u>id.</u>)  The forms are part of the CDC inmate

15 records, and they bear clear markings and signatures indicating

16 their authenticity.  Accordingly, the Court will take judicial

17 notice of the five inmate appeal forms and their contents.

18      Exhibit A to German's Declaration is a copy of the Abstract of

19 Judgment showing Janoe's 1994 murder conviction.  (German Decl. Ex.

20 A.)  Exhibits B and C to German's Declaration are copies of Supreme

21 Court decisions in <u>Woodford v. Ngo</u>, __ U.S. __, 126 S.Ct. 2378

22 (2006), and <u>Beard v. Banks</u>, 548 U.S. __, 126 S.Ct. 2572 (2006).

23 (German Decl. Exs. B, C.)  Exhibit D is a copy of Silvia Garcia's

24 Declaration in Support of Defendants' Motion for Summary Judgment

25 filed in a separate case, <u>Jones v. Garcia</u>, No. 03cv2441-J(WMC)

26 (S.D. Cal. Mar. 30, 2006).  (German Decl. Ex. D.)

27      The decisions and orders issued by another tribunal in a

28 related case are appropriate subjects of judicial notice.  <u>Biggs v.</u>

10

<u>Terhune</u>, 334 F.3d 910, 916 n.3 (9th Cir. 2003).  Accordingly, the Court will take judicial notice of Janoe's state court conviction. (German Decl. Ex. A.)  The recent decisions of the Supreme Court are not appropriate subjects of judicial notice.  Rule 201 of the Federal Rules of Evidence "governs only judicial notice of <u>adjudicative facts</u>."  Fed. R. Evid. 201(a) (emphasis added). Whether the contents of the declaration filed by Garcia in an unrelated action are subject to judicial notice here depends upon the facts the Defendants seek to establish.

The twenty-five exhibits to Plaintiff's Memorandum of Points and Authorities, which span nearly 400 pages, are not all appropriate for judicial notice.  For the purposes of the Motion to Dismiss, the relevant Plaintiff exhibits are Exhibits 8, 10, 11 and 13-22.  Exhibit 8 is a declaration signed by Janoe listing inmate grievances he asserts were submitted between January 2002 and July 2003 that allegedly went unanswered by prison administrators, along with copies of those grievance forms.  (Pl.'s Mem. Ex. 8.)  This evidence, however, does not bear any indicia of reliability that would make judicial notice appropriate; the forms are not stamped with log numbers or other marks showing they were filed.  (<u>See id.</u>) The Court is unable to determine whether the 602s attached to Exhibit 8 are copies of the inmate appeals Janoe previously submitted or are recently re-created specimen 602s.  The Defendants dispute that these 602s were submitted.  (Bell Decl. Ex. B at 1.) The Court cannot judicially notice that the five inmate appeals attached to Exhibit 8 were filed on or near the dates each was signed.  The fact is subject to reasonable dispute because there

1    are no sources for the assertions in the documents, "whose accuracy

2    cannot be reasonably questioned."   Fed. R. Evid. 201(b).

3         Exhibits 11 and 13-22 do not suffer from these defects.

4    Consequently, like Exhibits A through E attached to the Declaration

5    of Dexter Bell, the Court will take judicial notice of the inmate

6    appeal forms identified as Exhibits 11 and 13-22 to Plaintiff's

7    Declaration.

8         Exhibit 10 is a copy of a letter, dated April 2, 2002, from

9    Plaintiff to the Clerk of the United States Supreme Court regarding

10   his application for an extension of time and the clerk's refusal to

11   file Janoe's petition for certiorari because it was untimely.

12   (Pl.'s Mem. Ex. 10.)   This letter similarly bears no indicia of

13   reliability.   Because the facts included in this exhibit are

14   subject to reasonable dispute, the Court denies Plaintiff's request

15   for judicial notice of the contents of Exhibit 10.

16   **B.**   **Defendants' Objections to Plaintiff's Evidence**

17        With the exception of Exhibit 1, Defendants object to all the

18   exhibits submitted by the Plaintiff and attached to his

19   declaration.   (Defs.' Object. 1-2.)   Many of the exhibits are not

20   relevant to this Court's determination of Defendants' Motions.   For

21   that reason, the Court will only address the Plaintiff's exhibits

22   which are discussed in connection with the Motion to Dismiss or

23   Motion for Summary Judgment.   Defendants' objections to the

24   remaining exhibits are denied as moot.

25        **1.**   **Exhibits Considered on the Motion to Dismiss**

26        In deciding whether the Defendants' Motion to Dismiss should

27   be granted, this Court considered Plaintiff's Exhibits 8, 10, 11,

28   and 13-22.   Exhibit 8 is Janoe's Declaration which attaches five

602 forms requesting more library time and dated January 16,
January 25, and April 8, 2002, and January 2, and July 29, 2003.
(Pl.'s Mem. Ex. 8.)  Exhibit 10 is a copy of a letter, dated April
2, 2002, from Janoe to the Office of the Clerk of the United States
Supreme Court.  (Pl.'s Mem. Ex. 10.)  Exhibits 11 and 13-22 are
602s submitted by Janoe after January 5, 2004.  (Pl.'s Mem. Exs.
11, 13-22.)

Defendants object that Exhibits 8 and 10 are "incomplete,
irrelevant, self-serving, hearsay and unauthenticated."  (Defs.'
Object. 1-2.)  They also object to Exhibits 11 and 13-22 as
irrelevant.  (Id. at 2.)  These objections are overruled.

There is a difference between the consideration of evidence at
trial, in connection with a motion for summary judgment, or in
connection with an unenumerated motion to dismiss.  See Fraser v.
Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (discussing motion for
summary judgment and trial).  "At the summary judgment stage, we do
not focus on the admissibility of the evidence's form.  We instead
focus on the admissibility of its contents."  Id. (citing Block v.
City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001)).  The
contents of these exhibits contain facts to which Janoe could
testify at trial.  The Defendants' unenumerated Rule 12(b) motion
to dismiss will require the Court to decide issues of fact.  Like a
summary judgment motion, the opposing party will not be required to
produce evidence that would be admissible at trial to avoid a
dismissal under Rule 12(b) for failure to exhaust.

### 2.  **Plaintiff's Memorandum**

Defendants also object to "any averments of fact contained in
Plaintiff's July 11, 2006 Memorandum of Points and Authorities" on

1   a number of grounds.  (Defs.' Object. 2.)  A court ruling on

2   summary judgment should not consider the "mere allegation and

3   speculation" of the parties.  Nelson v. Pima Cmty. College, 83 F.3d

4   1075, 1081-82 (9th Cir. 1996).  But when the nonmoving party is

5   proceeding pro se, the Court has a duty to consider the nonmovant's

6   contentions set forth in motions and pleadings only if signed under

7   penalty of perjury.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th

8   Cir. 2004) (citations omitted).  Consequently, the Court will not

9   consider the facts and contentions contained in Plaintiff's

10  unverified Opposition.

11  C.   **The Merits of the Motion to Dismiss for Failure to Exhaust**

12       **Administrative Remedies**

13       Defendants move to dismiss Janoe's Complaint pursuant to the

14  unenumerated portions of Federal Rule of Civil Procedure 12(b) on

15  the ground that Plaintiff has not properly exhausted his

16  administrative remedies.  (Defs.' Mem. 3.)  Defendants allege that

17  all 602 forms submitted by Janoe appealing "any denial of library

18  time that hampered Janoe's ability to prepare the denied certiorari

19  petition" were untimely because they were submitted long after the

20  fifteen-day limit provided by the CDC's administrative regulations.

21  (Id. at 6.)  See Cal. Code Regs. tit. 15, § 3084.6(c).

22       "Exhaustion of administrative remedies serves two main

23  purposes."  Woodford v. Ngo, __ U.S. __, 126 S. Ct. 2378, 2385

24  (2006) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)).  It

25  first "protects 'administrative agency authority'" by giving an

26  agency "'an opportunity to correct its own mistakes . . . before it

27  is haled into federal court'" and by discouraging "'disregard of

28  [the agency's] procedures.'"  Id. (quoting McCarthy v. Madigan, 503

1   U.S. at 145).  "Second, exhaustion promotes efficiency. . . . [and]

2   'may produce a useful record for subsequent judicial

3   consideration.'"  Id. (quoting McCarthy v. Madigan, 503 U.S. at

4   145).  These two purposes are best served when civil rights

5   plaintiffs are forced to properly exhaust administrative remedies

6   and comply with the deadlines set by the administrative agency.

7   Id., __ U.S. at __, 126 S. Ct. at 2385-86.  Therefore, § 1997e(a)'s

8   exhaustion requirement has not been satisfied if the plaintiff

9   filed an administrative grievance that was rejected as untimely.

10  Id., __ U.S. at __, 126 S. Ct. at 2387.

11      Before the Ninth Circuit's decision in Wyatt, some courts

12  treated motions to dismiss for failure to exhaust administrative

13  remedies like motions to dismiss for lack of subject matter

14  jurisdiction and assigned the burden of proof to the plaintiff.

15  See Doe v. Schachter, 804 F. Supp. 53, 57 (N.D. Cal. 1992) (citing

16  Thornhill Publ'g Co. v. General Tel. & Elecs. Corp., 594 F.2d 730,

17  733 (9th Cir. 1979)).  Now, because the failure to exhaust is an

18  affirmative defense, it is the defendant's burden to raise and

19  prove the absence of exhaustion.  Brown, 422 F.3d at 936.  In

20  ruling on Defendants' Motion, the Court may "look beyond the

21  pleadings and decide disputed issues of fact."  Wyatt, 315 F.3d at

22  1119-20.  "[T]he court has a broad discretion as to the method to

23  be used in resolving the factual dispute."  Ritza v. Int'l

24  Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir.

25  1988).

26      If the defendant has pled and proved a failure to exhaust, the

27  burden shifts to the plaintiff to present evidence that he did

28  exhaust administrative remedies.  Ming Ching Jin v. Hense, No.

1   03cv5282-RECSMSP, 2005 WL 3080969, at *2 (E.D. Cal. Nov. 15, 2005).

2   The defendant bears the burden of proof, in part, because "'it is

3   considerably easier for a prison administrator to show a failure to

4   exhaust than it is for a prisoner to demonstrate exhaustion.'"

5   Wyatt, 315 F.3d at 1119 (quoting Ray v. Kertes, 285 F.3d 287, 295

6   (3d Cir. 2002)).

7       According to prison records submitted by Defendants, Plaintiff

8   did not file a 602 form complaining that he was given inadequate

9   access to the law library to complete his certiorari petition until

10  January 5, 2004, nearly two years after his petition was due.[1]

11  (Bell Decl. Ex. B at 1.)  Janoe, on the other hand, claims that he

12  submitted grievances on January 16, January 25, and April 8, 2002.

13  (Pl.'s Mem. 4, 6.)  He asserts that on April 1, 2002, his petition

14  for certiorari was returned with a letter stating that "the Court

15  no longer had jurisdiction to review the Writ of Certiorari,

16  because it was not filed timely."  (Pl.'s Mem. 5.)

17      The 602s preceding the denial of Janoe's certiorari petition

18  and requesting more library time do not appear to be within fifteen

19  days of "the event or decision being appealed."  See Cal. Code

20  Regs. tit. 15, § 3084.6(c).  The April 8, 2002, appeal, if filed,

21  would have been within fifteen days of Janoe learning that his

22  petition was denied.  The 602, however, follows the denial and is

23  unrelated to the preparation of Janoe's petition.  These three

24  appeal forms have no indication that they were ever submitted to

25

26  _____

27      [1] Plaintiff submitted a 602 form on August 18, 2002, which
appears on the Inmate/Parolee Appeals Tracking System printout as
"legal," however, that appeal concerns access to Janoe's legal
28  paperwork rather than access to the law library. (Bell Decl. Ex. A
at 1, Ex. F at 2.)

prison authorities, and there is no objective way to confirm they were completed on the dates alleged.

Janoe submitted to the Court copies of completed 602 forms dated January 16, January 25, and April 8, 2002; however, there is no confirmation that any of these forms was filed with the prison administration or completed on the date shown. (See Pl.'s Mem. Ex. 8, at 2-4.) They bear no log-number stamps from the prison administration nor has the area designated "Staff Response" been completed. (See id.) The forms do not appear on the prison appeals tracking system printout, even though it is the regular business practice of the prison to keep records of all filed appeals. (Bell Decl. 1-2; see Bell Decl. Ex. F.) Plaintiff's other 602s, Exhibits 11 and 13-22, contain identifying stamps or markings. (Pl.'s Mem. Exs. 11, 13-22.) The absence of any entry for the January and April 2002 grievances is evidence that they were not submitted to the first or second level of formal review. See Fed. R. Evid. 803(7).

Other than Janoe's declaration, Plaintiff has produced no evidence to verify that he timely submitted a 602 form within the applicable fifteen-day period. Without more, the Court cannot find that Janoe filed a timely grievance with the prison administration. See Lara v. Santa Clara County Jail, No. C-04-4745-CRB (PR), 2006 WL 1141930, at *1 (N.D. Cal. Apr. 27, 2006) (dismissing for failure to exhaust where jail administrative grievance records showed no grievances were filed and plaintiff submitted no evidence showing exhaustion); Mubarak v. Cal. Dep't of Corrs., 315 F. Supp. 2d 1057, 1059 (S.D. Cal. 2004) (finding failure to exhaust where the

17

1   plaintiff did not submit evidence that his claim had been

2   considered by the CDC at any level of administrative review).

3       Even if the Court were to accept Janoe's representation that a

4   602 form for informal review was properly submitted, he did not

5   proceed beyond informal review and pursue the three-step formal

6   review process.  <u>See</u> <u>Woodford v. Ngo</u>, __ U.S. at __, 126 S.Ct. at

7   2385.  Plaintiff has failed to show exhaustion.  CDC administrative

8   procedures are not properly exhausted until an inmate has pursued a

9   grievance through all available levels of review.  <u>Brown</u>, 422 F.3d

10   at 935; <u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir. 2005);

11   <u>Hazleton v. Alameida</u>, 358 F. Supp. 2d 926, 929 (C.D. Cal. 2005).

12       Janoe has failed to rebut Defendants' evidence that no

13   administrative grievance was submitted at the informal level within

14   the CDC's deadline, and no grievance was submitted at any formal

15   level of review.  Because Plaintiff has failed to properly exhaust

16   the available administrative remedies, his Complaint should be

17   dismissed.  Existing Ninth Circuit case law directs the district

18   court to dismiss the Complaint without prejudice.  <u>Vaden v.</u>

19   <u>Summerhill</u>, 449 F.3d 1047, 1051 (9th Cir. 2006) (citing <u>Wyatt</u>, 315

20   F.3d at 1120; <u>Fernandez v. Arpaio</u>, No. CV 05-2367-PHX-SMM (LOA),

21   2006 U.S. Dist. LEXIS 62773 (D. Ariz. Aug. 31, 2006) (dismissing

22   without prejudice where plaintiff failed to rebut defendants'

23   evidence of failure to exhaust).  But <u>Vaden v. Summerhill</u>, 449 F.3d

24   1047, and <u>Wyatt v. Terhune</u>, 315 F.3d 1108, are pre-<u>Ngo</u>.  Since the

25   Supreme Court decision, it may no longer be appropriate to dismiss

26   this Complaint with leave to amend, if it is too late to exhaust.

27   Janoe is in that situation.  The factual basis for Plaintiff's

28

04cv1421 W(RBB)

1  claim and the steps he took to exhaust the claim are before the
2  Court.

3      Since <u>Booth v. Churner</u>, 532 U.S. 741, exceptions to the
4  exhaustion requirement are limited.  The Supreme Court explained:
5  "Thus, we think that Congress has mandated exhaustion clearly
6  enough, regardless of the relief offered through administrative
7  procedures."  <u>Booth</u>, 532 U.S. at 741 (quoting <u>McCarthy v. Madigan</u>,
8  503 U.S. at 144 ("Where Congress specifically mandates, exhaustion
9  is required[.]").  The congressional mandate precludes Janoe from
10 arguing he need not exhaust because exhaustion would be futile or
11 that the agency has no power to award the relief requested.  <u>Id.</u> at
12 741 n.6.  <u>Booth</u> and <u>Ngo</u> effectively eliminated most exceptions to
13 exhaustion.  Even the assertion that exhaustion is not required for
14 constitutional claims does not apply.  <u>See</u> <u>Matthews v. Eldridge</u>,
15 424 U.S. 319, 329 n.10 (1976) ("If Eldridge had exhausted the full
16 set of available administrative review procedures, failure to have
17 raised his constitutional claim would not bar him from asserting it
18 later in a district court.")

19     Janoe no longer has time to exhaust his administrative
20 remedies.  There are no applicable exceptions to the exhaustion
21 requirements.  For all these reasons, Plaintiff's Complaint should
22 be **DISMISSED WITH PREJUDICE**.

23     The Court has concluded that Janoe failed to exhaust his
24 administrative remedies, and his Complaint should be dismissed.
25 This, by itself, would resolve this case.  Nevertheless, because a
26 review of Plaintiff's claims demonstrates that they are without
27 merit, the Court will address Defendants' Motion for Summary
28 Judgment.

04cv1421 W(RBB)

1

## IV. LEGAL STANDARDS APPLICABLE TO

2

## DEFENDANTS' SUMMARY JUDGMENT MOTION

3  **A.   Rule 56 Motions for Summary Judgment**

4           Federal Rule of Civil Procedure 56(c) authorizes granting

5  summary judgment "if the pleadings, depositions, answers to

6  interrogatories, and admissions on file, together with the

7  affidavits, if any, show that there is no genuine issue as to any

8  material fact and that the moving party is entitled to a judgment

9  as a matter of law."  Fed. R. Civ. P. 56(c).  Like the standard for

10 a directed verdict, judgment must be entered for the moving party

11 "if, under the governing law, there can be but one reasonable

12 conclusion as to the verdict."  Anderson v. Liberty Lobby, Inc.,

13 477 U.S. 242, 250 (1986) (citing Brady v. S. Ry. Co., 320 U.S. 476,

14 479-80 (1943)).  However, "[i]f reasonable minds could differ,"

15 judgment should not be entered in favor of the moving party.  Id.

16 at 250-51 (citing Wilkerson v. McCarthy, 336 U.S. 53, 62 (1949)).

17          The parties bear the same substantive burden of proof that

18 would apply at a trial on the merits, including plaintiff's burden

19 to establish any element essential to his case.  Cleveland v.

20 Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex Corp.

21 v. Catrett, 477 U.S. 317, 322 (1986); Liberty Lobby, 477 U.S. at

22 252; see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

23 "When the nonmoving party bears the burden of proof at trial,

24 summary judgment is warranted if the nonmovant fails to 'make a

25 showing sufficient to establish the existence of an element

26 essential to [its] case.'"  Nebraska v. Wyoming, 507 U.S. 584, 590

27 (1993) (quoting Celotex, 477 U.S. at 322).

28

The moving party bears the initial burden of identifying the pleadings or other evidence which it "believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. Stanford, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. Celotex, 477 U.S. at 324.  To successfully rebut a defendant's properly supported motion for summary judgment, the plaintiff "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff[']s[] favor, could convince a reasonable jury to find for the plaintiff[]." Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; Celotex, 477 U.S. at 323; Liberty Lobby, 477 U.S. at 249).  Material issues are those that "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248; see also SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  More than a "metaphysical doubt" is required to establish a genuine issue of material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

If the facts a plaintiff submits in opposition to a summary judgment motion cannot "connect any particular defendant to the incidents giving rise to liability, that defendant is entitled to summary judgment and may not be required to go to trial." Paine v. City of Lompoc, 265 F.3d 975, 984 (9th Cir. 2001).  In deciding whether any genuine issue of material fact remains for trial, courts must "view[] the evidence in the light most favorable to the

1    nonmoving party . . . ." <u>Fontana v. Haskin</u>, 262 F.3d 871, 876 (9th

2    Cir. 2001); <u>see also</u> <u>Eastman Kodak Co. v. Image Technical Servs.,</u>

3    <u>Inc.</u>, 504 U.S. 451, 456 (1992) (stating that the nonmoving party's

4    evidence is to be believed and all reasonable inferences drawn in

5    the nonmoving party's favor).

6        This Court must restrict its inquiry to facts supported by the

7    record.  It does "not give credence to empty rhetoric, . . . but

8    credit[s] only those assertions that are supported by materials of

9    evidentiary quality." <u>LeBlanc v. Salem (In re Mailman Steam Carpet</u>

10   <u>Cleaning Corp.)</u>, 196 F.3d 1, 2 (1st Cir. 1999) (citation omitted).

11   "[M]ere allegation and speculation do not create a factual dispute

12   for purposes of summary judgment." <u>Nelson v. Pima Cmty. College</u>,

13   83 F.3d at 1081-82.  However, when the nonmoving party is

14   proceeding pro se, the Court has a duty to consider "all of [the

15   nonmovant's] contentions offered in motions and pleadings, where

16   such contentions are based on personal knowledge and set forth

17   facts that would be admissible in evidence, and where [the

18   nonmovant] attested under penalty of perjury that the contents of

19   the motions or pleadings are true and correct." <u>Jones v. Blanas</u>,

20   393 F.3d at 922-23 (citations omitted).

21              **V. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

22       Defendants move for summary judgment on the grounds that (1)

23   Janoe has not suffered an actual injury; (2) Defendants are

24   absolutely immune from any damages claim; (3) Defendants are

25   entitled to qualified immunity; and (4) injunctive relief is not

26   appropriate in this case.  (Defs.' Mem. 8, 10, 13.)

27   //

28

04cv1421 W(RBB)

1   **A.    Defendants' Objections to Exhibits Considered on the Motion**

2        **for Summary Judgment**

3        In connection with the Defendants' Motion for Summary

4   Judgment, the Court considered Plaintiff's Exhibits 1, 2, 5, 8, 10,

5   24 and 25 ("summary judgment exhibits").   Exhibits 1 and 2 are

6   sections of the operations manual governing the law library and

7   revised in January 2002 by Warden Garcia and July 2004 by Associate

8   Warden Ryan.  (Pl.'s Mem. Exs. 1, 2.)  Exhibits 8 and 10 are the

9   602s and letter to the Clerk of the Supreme Court identified above,

10  and Exhibits 5, 24, and 25 are admissions and interrogatory

11  responses by Defendants Garcia and Ryan.  (Id. Exs. 5, 8, 10, 24,

12  25.)

13       Defendants do not object to Exhibit 1.  The relevance

14  objection to Exhibit 2 is sustained.  Nevertheless, even if the

15  contents of the exhibit were considered, this would not alter this

16  Court's decision on Defendants' Motion for Summary Judgment.

17  Defendants' objections to the remaining exhibits are overruled.

18  Much of the content of the summary judgment exhibits are facts that

19  could be testified to at trial by Janoe.  See Fraser v. Goodale,

20  342 F.3d at 1036-37; Hughes v. United States, 953 F.2d 531, 543

21  (9th Cir. 1992) (considering affidavit despite hearsay and best

22  evidence objections where the underlying facts could have been

23  testified to at trial).

24  **B.   Actual Injury**

25       In order to survive a motion for summary judgment, the

26  plaintiff must set forth specific facts establishing standing to

27  bring the case.  Lewis v. Casey, 518 U.S. 343, 357-58 (1996)

28  (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

1   The doctrine of standing "prevents courts of law from undertaking
2   tasks assigned to the political branches."  Id. at 349 (citations
3   omitted).  "It is the role of the courts to provide relief to
4   claimants . . . who have suffered, or will immediately suffer,
5   actual harm; it is not the role of courts, but that of the
6   political branches, to shape the institutions of government . . .
7   ."  Id.  To have standing to assert a claim for denial of access to
8   the courts, a plaintiff must allege that he suffered an actual
9   injury.  Id. at 351; Vandelft v. Moses, 31 F.3d 794, 798 (9th Cir.
10  1994).

11       "[A]n inmate cannot establish relevant actual injury simply by
12  establishing that his prison's law library or legal assistance
13  program is subpar in some theoretical sense."  Lewis, 518 U.S. at
14  351.  Actual injury exists where the inmate can "demonstrate that
15  the alleged shortcomings in the library or legal assistance program
16  hindered his efforts to pursue a legal claim."  Id.

17       Defendants argue that to show actual injury, Janoe must
18  establish "that his inadequate access to the prison's law library
19  resulted in the denial of his writ petition."  (Defs.' Mem. 9.)
20  This overstates Plaintiff's burden.  See Simkins v. Bruce, 406 F.3d
21  1239, 1244 (10th Cir. 2005) (holding that "a plaintiff need not
22  show that a claim with which a defendant interfered would have
23  prevailed, but only that it was not frivolous"); Walters v. Edgar,
24  163 F.3d 430, 434 (7th Cir. 1998) (stating that denial of access to
25  the courts claim requires that the denial had some effect on the
26  relief sought by the plaintiff).

27       In Christopher v. Harbury, 536 U.S. 403, 413-15 (2002), cited
28  by Defendants, the Court discussed forward- and backward-looking

1    access to courts claims.  In both, "the right [of access to courts]

2    is ancillary to the underlying claim, without which a plaintiff

3    cannot have suffered injury by being shut out of court."  Id. at

4    415.

5        Janoe's claim is backward looking.  He complains that the

6    limited library time resulted in the Supreme Court's refusal to

7    entertain his petition for certiorari.  (Compl. 3-4.)  Plaintiff

8    must establish that his underlying claim was "nonfrivolous" or

9    "arguable."  Christopher v. Harbury, 536 U.S. at 415.  "[T]he

10   predicate claim [must] be described well enough to apply the

11   'nonfrivolous' test and to show the 'arguable' nature of the

12   underlying claim is more than hope."  Id. at 416 (footnote

13   omitted).  A prisoner's right to access the courts does not include

14   the right to present frivolous claims.  Lewis v. Casey, 518 U.S. at

15   353 & n.3.

16       The Seventh Circuit has recently outlined what is required of

17   a backwards-looking access to courts claim.  Marshall v. Knight,

18   445 F.3d 965, 968-99 (7th Cir. 2006).

19           [T]he mere denial of access to a prison law library or to
             the other legal materials is not itself a violation of a
20           prisoner's rights; his right is to access the courts, and
             only if the defendants' conduct prejudices a potentially
21           meritorious challenge to the prisoner's conviction,
             sentence, or conditions of confinement has this right
22           been infringed.

23   Id. at 968 (emphasis in original) (footnote omitted).

24       Janoe has not shown that his petition for certiorari was not

25   frivolous or that it raised an arguable claim.  Plaintiff's

26   challenge to his 1994 first degree murder conviction had been

27   rejected by the state courts, and federal habeas corpus relief had

28   been denied by the district court and the Ninth Circuit.  At the

25

1  summary judgment stage, more than a conclusory allegation is
2  required to show an actual injury.
3        This claim suffers from another defect.  Janoe asserts that he
4  suffered actual injury caused by Defendants' actions when his
5  petition for a writ of certiorari was rejected by the Supreme
6  Court.  (Pl.'s Mem. 12.)  Plaintiff was notified by the Supreme
7  Court on April 1, 2002, that the Court no longer had jurisdiction
8  to review his petition because it was untimely.  (Id. at 5-6.)
9  According to Janoe, he "was not capable of bringing the [petition]
10 in a timely manner, because of denial of access to the law library
11 and/or the books and materials therein."  (Id. at 12.)
12       Plaintiff did not complete his petition until March 13, 2002,
13 although it was due on January 31, 2002.  (Id. at 5.)  On March 13,
14 Janoe submitted the petition with an application for an extension
15 of time to file it, since it was already overdue.  (Id. at 5, Ex.
16 10.)  His request was denied, and the petition was returned to him.
17 (Id. at 5.)  Plaintiff again tried to submit the petition with a
18 request for extension of time, but it was rejected as untimely.
19 (Id. at 5, Ex. 10.)
20       Janoe made no attempt to get an extension of time to file his
21 petition prior to the filing deadline, which is required by Supreme
22 Court rules.  S. Ct. R. 30.2.  If he had done so, Plaintiff may
23 have been able to submit his petition to the Supreme Court for
24 review.  Janoe cannot show that the prison library policy prevented
25 him from applying for an extension and actually denied him access
26 to the courts.  Cf. Vandelft, 31 F.3d at 798 (finding no actual
27 injury where inmate did not request an extension of time to file
28 his reply).

1    Although Plaintiff claims that he sought, but was denied,

2  library access on January 12, January 25, January 29, and January

3  31, 2002, this does not change the result. (See Janoe Decl. Ex. 8;

4  Raske Decl. Exs. A, B.)  In some instances, missing court deadlines

5  or failing to make timely filings because of the denial of

6  reasonable access to the prison law library can give rise to an

7  access-to-courts claim.  Ortloff v. United States, 335 F.3d 652,

8  656 (7th Cir. 2003).  This is only true, however, if the underlying

9  claim is nonfrivolous and arguable.  Christopher v. Harbury, 536

10 U.S. at 415; Marshall v. Knight, 445 F.3d at 968 (requiring the

11 predicate claim to be "potentially meritorious").  Here, Janoe has

12 presented no evidence that he suffered an actual injury.  Likewise,

13 he has presented no evidence that his limited library time

14 prevented him from seeking an extension of time within which to

15 file his petition for certiorari.  The Defendants' Motion for

16 Summary Judgment should be granted.

17 **C.   Absolute Immunity**

18     The Eleventh Amendment grants the states immunity from private

19 civil suits.  U.S. Const. amend. XI; Henry v. County of Shasta, 132

20 F.3d 512, 517 (9th Cir. 1997), as amended, 137 F.3d 1372 (9th Cir.

21 1998).  This immunity applies to civil rights claims brought under

22 § 1983, so an inmate cannot recover damages from the state under §

23 1983 unless the state waives its immunity.  Will v. Mich. Dep't of

24 State Police, 491 U.S. 58, 66 (1989).  A federal court only has

25 jurisdiction over a suit against a state when the relief sought is

26 "prospective injunctive relief in order to end a continuing

27 violation of federal law."  Armstrong v. Wilson, 124 F.3d 1019,

28

27

1  1025 (9th Cir. 1997) (quoting <u>Seminole Tribe of Fla. v. Florida</u>,

2  517 U.S. 44, 73 (1996) (internal quotations omitted).

3       Eleventh Amendment immunity also extends to state officials

4  sued in their official capacities.  "[A] suit against a state

5  official in his or her official capacity is not a suit against the

6  official but rather is a suit against the official's office."

7  <u>Will</u>, 491 U.S. at 71 (citing <u>Brandon v. Holt</u>, 469 U.S. 464, 471

8  (1985)).  "As such, it is no different from a suit against the

9  State itself."  <u>Id.</u> (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-

10 66 (1985); <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436 U.S. 658,

11 690 n.55 (1978)).

12      Plaintiff sued both Silvia Garcia, Warden of Calipatria State

13 Prison, and Stuart J. Ryan, Acting Warden, in their official

14 capacities.  (Compl. 2.)  Janoe makes no claims against Defendants

15 in their personal capacities.  (<u>See</u> <u>id.</u>)  Plaintiff's claims

16 against Defendants in their official capacities constitute claims

17 against the State of California, which are absolutely immune from

18 liability for damages.  Thus, Janoe is barred from seeking monetary

19 damages from these Defendants, and they are entitled to summary

20 judgment on his $100,000 claim for relief.  (<u>See</u> <u>id.</u> at 9.)

21 **D.   <u>Qualified Immunity</u>**

22      "[G]overnment officials performing discretionary functions,

23 generally are shielded from liability for civil damages insofar as

24 their conduct does not violate clearly established statutory or

25 constitutional rights of which a reasonable person would have

26 known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  A

27 constitutional right is "clearly established" if it is

28 "sufficiently clear that a reasonable official would understand

                                    28

that what he is doing violates that right." <u>Hope v. Pelzer</u>, 536

U.S. 730, 739 (2002) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635,

640 (1987)).  This standard ensures that government officials are

on notice of the legality of their conduct before they are

subjected to suit.  <u>Id.</u> (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 206

(2001)).  Qualified immunity is immunity from suit for monetary

damages, but it is not immunity from suit for declaratory or

injunctive relief.  <u>Hydrick v. Hunter</u>, 449 F.3d 978, 992 (9th Cir.

2006).  It protects "all but the plainly incompetent or those who

knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341

(1986).

    "The threshold inquiry a court must undertake in a qualified

immunity analysis is whether plaintiff's allegations, if true,

establish a constitutional violation." <u>Hope</u>, 536 U.S. at 736; <u>see</u>

<u>also</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If the allegations

make out a constitutional violation, the next step is to determine

whether the right alleged to have been violated is "clearly

established." <u>Saucier</u>, 533 U.S. at 201.  In ruling on a motion for

summary judgment based on qualified immunity, the court must decide

the "'purely legal' issue of 'whether facts alleged by the

plaintiff support a claim of violation of clearly established

law.'" <u>Lytle v. Wondrash</u>, 182 F.3d 1083, 1086 (9th Cir. 1999)

(quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 528 n.9 (1985)).

    **1.   Violation of a Constitutional Right**

    As discussed above, Janoe cannot establish that he was

deprived of the ability to file a nonfrivolous petition for

certiorari.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. at 353 n.3; <u>Marshall v.</u>

<u>Knight</u>, 445 F.3d at 968.  This shortcoming requires that summary

judgment be entered for the Defendants, and the qualified immunity
inquiry need proceed no further.

There is, however, language in some decisions that suggests
that a missed deadline, by itself, may constitute an actual injury.
See Lewis v. Casey, 518 U.S. 348 (stating that inability to meet a
filing deadline or present a claim can be actual injury); Ortloff
v. United States, 335 F.3d at 652 (indicating that missed court
deadlines and failure to make timely filings can constitute
prejudice); Phillips v. Hust, 338 F. Supp. 2d 1148, 1161 (D. Or.
2004) (finding an actual injury where plaintiff missed the deadline
to file his petition for certiorari, which was subsequently denied
as untimely), judgment entered in 2004 U.S. Dist. LEXIS 19811 (D.
Or. Sept. 29, 2004).

In Phillips, the plaintiff was denied permission to use the
library's binding machine to bind his one-hundred-plus page
certiorari petition; binding or stapling is required by Rule 33.2
of the Rules of the Supreme Court. Sup. Ct. R. 33.2. At the
summary judgment stage, the district court failed to consider
whether Phillips's petition was "nonfrivolous" or raised an
"arguable" claim. See Christopher v. Harbury, 536 U.S. at 415.
For the purpose of resolving whether the Defendants are entitled to
qualified immunity, this Court will assume that Janoe can show an
actual injury resulting from his missed deadline.

**2.   Whether the Right Was Clearly Established**

Even if Plaintiff's claim that he missed the deadline to file
his petition for certiorari because he was not given adequate
library time alleges a constitutional violation, the qualified
immunity analysis requires this Court to determine whether the

1  right was clearly established.  <u>Saucier v. Katz</u>, 533 U.S. at 201.

2  "Whether the right is clearly established in a particular case is

3  judged as of the date of the incident alleged, and is a pure

4  question of law."  <u>Phillips v. Hust</u>, 338 F. Supp. 2d at 1162

5  (citing <u>Act Up!/Portland v. Bagley</u>, 988 F.2d 868, 873 (9th Cir.

6  1993)).

7      Defendants correctly observe that Janoe has a substantial

8  burden in opposing their claim of qualified immunity.  (Defs.' Mem.

9  11.)

10      [I]f a defendant moving for summary judgement has
       produced enough evidence to require the plaintiff to go
11      beyond his or her pleadings, the plaintiff must counter
       by producing evidence of his or her own.  If in that
12      circumstance the plaintiff fails to produce evidence, the
       district court is not required (or even allowed) to
13      assume that the challenged factual allegations in the
       plaintiff's complaint are true.  Similarly, if in that
14      circumstance the plaintiff produces evidence that is not
       enough, by itself, to create a genuine issue of material
15      fact, the district court is not required (or even
       allowed) to assume the truth of challenged allegations in
16      the complaint in order to supplement that evidence.

17  <u>Butler v. San Diego Dist. Attorney's Office</u>, 370 F.3d 956, 963 (9th

18  Cir. 2004).

19      Defendants cite <u>Crawford-El v. Britton</u>, 523 U.S. 574 (1998),

20  and incorrectly argue that to defeat qualified immunity, Janoe must

21  provide clear and convincing evidence of Defendants' improper

22  motive.  (Defs.' Mem. 11.)  This is not the law.  Contrary to

23  defense counsel's assertion, the Supreme Court did not affirm the

24  court of appeal's application of a clear and convincing standard;

25  the Court rejected it, vacated the judgment, and remanded the case.

26  <u>Id.</u> at 601.  The Supreme Court explained:  "Neither the text of §

27  1983 or any other federal statute, nor the Federal Rules of Civil

28  Procedure, provide any support for imposing the clear and

convincing burden of proof on plaintiffs either at the summary
judgment stage or in the trial itself." Id. at 594.

Janoe alleges his right of access to the courts was violated
by the warden and acting warden of Calipatria prison when they
instituted policies that reduced the operating schedule of the
library and limited inmate library access to one two-hour session
per week. (Compl. 3-7; Pl.'s Mem. 15.) Inmates have a fundamental
right to access the courts, and this right places an affirmative
obligation on prison officials to assure prisoners meaningful
access. Bounds, 430 U.S. at 828. The obligation may be fulfilled
"by providing prisoners with adequate law libraries or adequate
assistance from persons trained in the law." Id. (footnote
omitted). No particular methodology is required, but prisoners
must be given the capability to file nonfrivolous legal claims.
Lewis, 518 U.S. at 356.

Several courts have refused to find constitutional violations
where inmates' access to law libraries was restricted. E.g.,
Rhinehart v. Gomez, No. 93cv3747, 1995 WL 364339, at *7 (N.D. Cal.
June 8, 1995) (finding no denial of access to courts where prisoner
could only access law library for two hours every two weeks); Magee
v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) (finding one hour per
week in law library of city jail did not violate inmate's
constitutional rights). Restrictions identical to those at issue
here, allowing two hours of library access per week for inmates
without court deadlines and four hours per week for those with
verified deadlines, were held to be "reasonable as a matter of law"
by another district court. Zatko v. Rowland, 835 F. Supp. 1174,
1177 (N.D. Cal. 1993). But cf. United States v. Janis, 820 F.

Supp. 512, 515 (S.D. Cal. 1992) (ordering that inmate representing himself in criminal trial be given library access ten hours per week if requested).

The essence of Janoe's Complaint is that his petition for certiorari was denied as untimely because he was not given enough library time to prepare his petition and a motion for an extension of time. (Compl. 3-7.) General allegations, however, do not defeat qualified immunity. "[I]n resolving a motion for summary judgment based on qualified immunity, a court must carefully examine the specific allegations against each individual defendant . . . ." Cunningham v. Gates, 229 F.3d 1271, 1287 (9th Cir. 2000); see Anderson, 483 U.S. at 639; Figueroa v. Gates, 207 F. Supp. 2d 1085, 1091 (C.D. Cal. 2002).

Janoe alleges that on January 24, 2001, Warden Garcia directed that four law libraries be consolidated into two, and as a result, law library access was "too restrictive." (Compl. 3.) According to the Plaintiff, the consolidation created problems and made access more difficult. (Id. at 4.) The policy he complains of authorizes inmates with court deadlines within thirty days to "receive a minimum of four (4) hours per week in two (2) hour increments." (Pl.'s Mem. Ex. 1, at 7.) Janoe notes that in interrogatory answers, Defendant Garcia stated that two hours of access to the law library each week was adequate access. (Pl.'s Mem. 13; Pl.'s Mem. Ex. 24, at 8.)

The Complaint contains even fewer references to Defendant Ryan. On March 22, 2004, he is alleged to have issued a memorandum changing the law library schedule. (Compl. 7.) Plaintiff's exhibits include a revision to the law library policies which was

1    issued by Defendant Ryan on September 28, 2004.  (Pl.'s Mem. Ex.

2    2.)  Janoe observes that Ryan answered Plaintiff's interrogatory

3    number twenty-three by stating that two hours of library time a

4    week was adequate access.  (Pl.'s Mem. Ex. 25, at 8.)

5         "[T]he right alleged to have been violated must not be so

6    broadly defined as to 'convert the rule of qualified that our cases

7    plainly establish into a rule of virtually unqualified liability

8    simply by alleging violation of extremely abstract rights.'"

9    Cunningham, 229 F.3d at 1288 (citing Anderson v. Creighton, 483

10   U.S. at 639).  "On the other hand, . . . the right can not be so

11   narrowly construed so as to 'define away all potential claims.'"

12   Id. (citing Kelley v. Borg, 60 F.3d 664, 667 (9th Cir. 1995)).

13        Here, Janoe argues that Bounds v. Smith, 430 U.S. 817, and

14   Lewis v. Casey, 510 U.S. 343, establish that prisoners have a

15   constitutional right of access to the courts.  This is true.

16   "While Bounds guarantees the right of access to the courts under

17   the Fourteenth Amendment, prisoners have no inherent or independent

18   right of access to a law library or to legal assistance."  Wilson

19   v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998) (citing Lewis,

20   510 U.S. at 349-51).  Supreme Court law does not dictate a minimum

21   number of hours or any other requirement for satisfying the right

22   of access to law libraries or legal assistance.  Vandelft v. Moses,

23   31 F.3d at 796; Walker v. Mintzes, 771 F.2d 920, 931 (6th Cir.

24   1985) (stating that Supreme Court, in Bounds, did not prescribe a

25   specific amount of library time); Oswald v. Graves, 819 F. Supp.

26   680, 685 (E.D. Mich. 1993).

27        A right to a specified number of hours in the library has not

28   been recognized by the Supreme Court.  It is not clearly

                                    34

1    established.   Consequently, Defendant Garcia is entitled to

2    qualified immunity.   A reasonable officer in her position could

3    have believed that authorizing an inmate with a court deadline

4    (like Janoe) to have a minimum of four hours per week during the

5    thirty days preceding a deadline was a reasonable limitation.

6    Ordinarily, the same rationale would extend to Defendant Ryan, but

7    because this Court has concluded that his alleged actions in 2004

8    follow Janoe's claimed date of injury, 2002, there is no claim

9    against Ryan.

10   **E.   Injunctive Relief**

11        In the request for relief in his Complaint, Janoe asks the

12   Court to issue an injunction for prospective relief, requiring

13   Defendants to institute policies (1) making law libraries open at

14   least five days per week for each facility yard, (2) allowing an

15   inmate to access the law library five days per week, for two hours

16   each day, and (3) permitting inmates to use typewriters in the law

17   library.   (Compl. 9.)   These requests, if granted, would require

18   state prison administrators to enact sweeping changes to prison

19   policies.

20        Injunctive relief is an equitable remedy that is appropriate

21   where the plaintiff can show he will suffer a "likelihood of

22   substantial and immediate irreparable injury" if an injunction is

23   not granted.   Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1049

24   (9th Cir. 1999) (en banc) (quoting City of Los Angeles v. Lyons,

25   461 U.S. 95, 111 (1983)); see also Doran v. Salem Inn, Inc., 422

26   U.S. 922, 932 (1975).   Defendants assert that Plaintiff is not

27   entitled to an injunction because he "cannot prove any ongoing

28   violation of his constitutional rights . . . ."   (Defs.' Mem. 13.)

1    The traditional criteria for granting an injunction are "'(1)
2  a strong likelihood of success on the merits; (2) the possibility
3  of irreparable injury to the plaintiffs if injunctive relief is not
4  granted; (3) a balance of hardships favoring the plaintiffs; and
5  (4) advancement of the public interest.'"  <u>Mayweathers v. Newland</u>,
6  258 F.3d 930, 938 (9th Cir. 2001)(quoting <u>Textile Unltd., Inc. v.</u>
7  <u>A.BMH & Co.</u>, 240 F.3d 781, 786 (9th Cir. 2001).  At the other end
8  of the continuum for granting injunctive relief, the Court examines
9  whether "serious questions are raised and the balance of hardships
10 tips sharply in favor of the moving party."  <u>Stuhlbarg Intern.</u>
11 <u>Sales Co. v. John D. Brush & Co.</u>, 240 F.3d 832, 840 (9th Cir. 2001)
12 (citing <u>Dr. Seuss Enters. V. Penguin Books USA, Inc.</u>, 109 F.3d
13 1394, 1397 n.1 (9th Cir. 1997)).  Under either measure, this
14 Plaintiff is not entitled to injunctive relief.

15   The Court does not have jurisdiction to issue wide-reaching
16 injunctions to remedy inadequacies in prison administration that
17 extend beyond any actual injury suffered by a plaintiff.  <u>Lewis</u>,
18 518 U.S. at 357.  "The remedy must of course be limited to the
19 inadequacy that produced the injury in fact that the plaintiff has
20 established."  <u>Id.</u>  (citing <u>Missouri v. Jenkins</u>, 515 U.S. 70, 88,
21 89 (1995)).

22   Janoe is the sole Plaintiff in this case.  (Compl. 1.)
23 Defendants assert that he lacks standing to seek injunctive relief.
24 (Defs.' Mem. 13-14.)  The Ninth Circuit has defined standing as
25 requiring an "injury in fact (a concrete harm suffered by the
26 plaintiff that is actual or imminent), causation, and
27 redressability."  <u>Doe v. National Bd. of Med. Exam'rs</u>, 199 F.3d
28 146, 152 (9th Cir. 1999)(citing <u>Lujan v. Defenders of Wildlife</u>, 504

1   U.S. 555, 560 (1992)).  These factors are elements of the
2   Plaintiff's case; he carries the burden of producing evidence to
3   establish standing.  Janoe's showing falls short.

4        In Lewis v. Casey, 518 U.S. at 351, the Court noted that
5   Bounds did not create "an abstract, freestanding right to a law
6   library or legal assistance . . . ."  Instead, the inmate must show
7   an actual injury, which "derives ultimately from the doctrine of
8   standing, a constitutional principle that prevents courts of law
9   from undertaking tasks assigned to the political branches."  Id. at
10  349.  For the reasons discussed above, Janoe has not demonstrated
11  that he suffered an "actual injury."  Without an actual injury, he
12  cannot seek injunctive relief.

13       Nor has Janoe demonstrated that he may suffer an imminent
14  injury.  In City of Los Angeles v. Lyons, 461 U.S. at 101-02, the
15  Court explained that "[t]he plaintiff must show that he 'has
16  sustained or is immediately in danger of sustaining some direct
17  injury' as a result of the challenged official conduct and the
18  injury or threat of injury must be both 'real and immediate,' not
19  'conjectural' or 'hypothetical.'"

20       The Court has already concluded that Janoe failed to establish
21  that he suffered an actual injury that is redressable by the Court,
22  and he has not shown an imminent injury.  Furthermore, as the sole
23  plaintiff, he has no standing to seek prospective injunctive relief
24  on behalf of other inmates.  As the Defendants correctly observe,
25  Janoe's available remedies are limited by the Prison Litigation
26  Reform Act.  (Defs.' Mem. 16.)  Section 3626(a)(1) of the Act
27  states:  "Prospective relief in any civil action with respect to
28  prison conditions shall extend no further than necessary to correct

04cv1421 W(RBB)

1   the violation of the Federal right of a particular plaintiff or

2   plaintiffs."  18 U.S.C.A. § 3626(a) West 2000).  This statutory

3   restriction limits available relief.

4        Even if standing were not an obstacle, Janoe has another

5   hurdle to overcome.  The Plaintiff is not entitled to injunctive

6   relief unless he can show that he will suffer substantial and

7   immediate irreparable injury for which there is an inadequate

8   remedy at law.  Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d

9   1486, 1495 (9th Cir. 1996).  "Under any formulation of the test

10  [for injunctive relief], plaintiff must demonstrate that there

11  exists a significant threat of irreparable injury." Oakland

12  Tribune, Inc. V. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th

13  Cir. 1985).  Janoe has made no showing of irreparable harm.

14       For all these reasons, Plaintiff cannot obtain the injunctive

15  relief he seeks.

16                          **VI. CONCLUSION**

17       Because Janoe failed to exhaust administrative remedies,

18  Defendants' Motion to Dismiss should be **GRANTED**, and this action

19  should be **DISMISSED WITH PREJUDICE** in its entirety.  In the

20  alternative, Defendants' Motion for Summary Judgment should be

21  **GRANTED**.  Defendants' evidentiary objections are **SUSTAINED** in part

22  and **OVERRULED** in part.

23       This Report and Recommendation will be submitted to the United

24  States District Court judge assigned to this case, pursuant to the

25  provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

26  objections with the Court and serve a copy on all parties on or

27  before **November 13, 2006**.  The document should be captioned

28  "Objections to Report and Recommendation."  Any reply to the

1  objections shall be served and filed on or before **November 27,**

2  **2006**.   The parties are advised that failure to file objections

3  within the specified time may waive the right to appeal the

4  district court's order.   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

5  1991).

6

7  Dated: October 12, 2006

8                                        Ruben B. Brooks
                                         United States Magistrate Judge

9

10  cc:  Judge Whelan
         All Parties of Record

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28